UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LORI MENDEZ, <br>               Plaintiff, <br>     vs. <br><br> HOBBY LOBBY STORES, INC.; <br> JOHN DOES I-XX, inclusive; ABC <br> CORPORATIONS I-X, inclusive; <br> and BLACK AND WHITE COMPANIES, <br> I-X, inclusive, <br><br>               Defendants. | Case No. 3:23-CV-00181-ART-CLB <br><br> ORDER <br> (ECF Nos. 44, 46, 47) |

Before the Court are Plaintiff's Motion to Strike (ECF No. 46), Defendant's Motion for Summary Judgment (ECF No. 47), and Plaintiff's Motion for Sanctions (ECF No. 44). For the reasons below, the Court GRANTS Plaintiff's Motion to Strike the supplemental expert report of Dr. Hazany, DENIES Defendant's Motion for Summary Judgment, and GRANTS Plaintiff's Motion for Sanctions.

## I.    Motion to Strike

Plaintiff's otion to strike Defendant's supplemental expert report of Dr. Hazany argues that the supplemental report was untimely under Federal Rule of Civil Procedure 26, and that it should therefore be excluded under Federal Rule of Civil Procedure 37. The Court agrees and strikes in its entirety the supplemental report of Dr. Hazany.

According to the Court's scheduling order, the deadline for initial expert reports was March 25, 2024. (ECF No. 25.) On that date, Hobby Lobby served Plaintiff with its initial expert disclosure, which disclosed Dr. Hazany and included his November 22, 2023 initial expert report. (ECF No. 46-17.) That report listed 29 images that Dr. Hazany reviewed. (*Id.*) On October 8, 2024, Hobby Lobby served Plaintiff with a supplemental report from Dr. Hazany, in which he

1

1    reviewed an additional seven images. (ECF No. 46-19.) It is undisputed that these

2    seven images were available to Dr. Hazany at the time of his initial expert report.

3    Discovery then closed on October 23, 2024. (ECF No. 38.)

4    **A. The Supplemental Report was Untimely**

5    Defendants do not appear to dispute that the disclosure was untimely.

6    Under Federal Rule of Civil Procedure 26(e), a party must supplement expert

7    disclosures "if the party learns that in some material respect the disclosure or

8    response is incomplete or incorrect, and if the additional or corrective information

9    has not otherwise been made known to the other parties during the discovery

10   process or in writing." Supplementation is meant to correct inaccuracies or fill in

11   information that was not available at the time of the initial report disclosure.

12   *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-00772-GMN-NJK, 2016

13   WL 3965190, at *2 (D. Nev. July 21, 2016) (citing *Luke v. Fam. Care & Urgent*

14   *Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)). "However, supplementation

15   is not a 'loophole' for parties who submit partial disclosures and it does not allow

16   parties to include claims and issues which should have been included in the

17   initial expert report." *Tamares Las Vegas Props., LLC v. Travelers Indem. Co.*, No.

18   2:16-CV-02933-JAD-NJK, 2018 WL 11326553, at *2 (D. Nev. Nov. 1, 2018) (citing

19   *Hologram*, 2016 WL 3965190, at *2.) Because the parties do not dispute that Dr.

20   Hazany had access to the seven images at the time of his initial report, the

21   supplemental report was improper under Rule 26(e). *See id.* at *3 (supplemental

22   expert report filed after expert report deadline was improper where it was made

23   based upon information available at the time); *see also Hologram*, 2016 WL

24   3965190, at *3 (same).

25   **B. Striking is Warranted Under Rule 37**

26   Under Federal Rule of Civil Procedure 37(c)(1), information or witnesses not

27   properly disclosed under Rule 26(e) are prohibited at trial unless the failure "was

28   substantially justified or is harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

2

259 F.3d 1101, 1106 (9th Cir. 2001). Courts consider the following factors in determining whether a failure to disclose was justified or harmless: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724, at *4 (D. Nev. Oct. 25, 2013).

Defendant primarily argues that sanctions are not warranted because the improper supplemental report was harmless. Defendant's reliance on *Hawks Hill Ranch, LLC v. Yarak*, No. 22-CV-01567-MMC-DMR, 2024 WL 1421265 (N.D. Cal. Apr. 2, 2024), and *Burger*, 2013 WL 5781724, are misplaced. In *Hawks Hill Ranch* the court found that the additions made in the supplemental report were "minor changes" such as corrections of typos and the addition of "a few lines to clarify or emphasize points made in the rebuttal report." 2024 WL 1421265 at *2. Here, there is no dispute that Defendants supplemental report reviews seven images not reviewed at all in the initial report. The supplemental report makes findings and conclusions as to several of these images, such as "No CT evidence for traumatic brain injury," "Other etiologies including traumatic brain injury are unlikely," and "No post-traumatic findings." (ECF No. 46-19 at 3-5.) The finding in *Hawks Hill Ranch* is therefore not applicable to the instant circumstances— unlike in that case, here the supplemental report obviously "alters [] prior opinions" and "adds new ones" as to these seven images. *See* 2024 WL 1421265 at *2.

In *Burger*, the court found that there was no harm to the opposing party where the supplement was filed "well before the rebuttal expert disclosure deadline, meaning the rebuttal expert had ample time to review and rebut the supplements," and "well before the close of discovery and expert depositions." 2013 WL 5781724, at *4. Given this, the court held that any risk of prejudice or

surprise could easily be cured. *Id.* The same is not true here. The deadline for rebuttal expert disclosure was May 22, 2024. (ECF No. 29.) Defendants did not serve the supplemental disclosure until October 8, 2024, which was only 15 days before discovery closed. As Plaintiffs point out, this meant that Plaintiff's rebuttal expert had no opportunity to review and rebut the supplement.

The facts of this case are closer to those in *Tamares*, 2018 WL 11326553. There, the court granted a plaintiff's motion to strike a supplemental expert report where it was filed after the rebuttal expert deadline "despite numerous extensions," and where discovery had closed. *Id.* at *4; *see also Hologram*, 2016 WL 3965190, at *3 (granting motion to strike supplemental expert report filed after rebuttal expert disclosure deadline and "on the twilight of the discovery period"). Here, the late disclosure meant that Plaintiff's rebuttal expert was not able to review and rebut the new conclusions and opinions in the supplemental report. The Court granted the parties multiple extensions of time during the discovery period, including an extension of the rebuttal expert deadline. (*See* ECF Nos. 25, 29, 36, 38.) Nor can the prejudice be cured at this stage. *See Hawks Hill Ranch*, 2024 WL 1421265, at *4 (N.D. Cal. Apr. 2, 2024) (no cure where discovery is closed and dispositive motion fully briefed). Accordingly, the Court grants Plaintiff's motion to strike Defendant's supplemental expert report of Dr. Hazany.

## II.    Motion for Summary Judgment

Defendant's motion for summary judgment makes two arguments: first, that Plaintiff has failed to bring forth evidence that Hobby Lobby breached its duty of care, and second, that the Plaintiff's expert is not qualified, making his opinions inadmissible.

### A. Factual Background

On June 5, 2021, Plaintiff Lori Mendez was shopping at a Hobby Lobby store with her daughter. (ECF No. 53-2 at 3.) As Plaintiff was browsing, she noticed a framed picture that she thought her great-grandson would like. (*Id.* at

4.) Plaintiff reached for the frame and attempted to pull it off the display. (*Id.*)  As she did so, "the next thing I know I have stuff falling all over me." (*Id.*) The images provided by Hobby Lobby appear to show that the picture Plaintiff was reaching for was positioned at the very top of a peg board display, and just above the picture was a shelf positioned over the top of the display. (ECF No. 53-3 at 6-8.) The incident report states that "[w]hile getting a photo the above shelf fell on Lori's head." (*Id.* at 4.)  This is consistent with what Plaintiff's daughter wrote on the "witness information" portion of the report; "the above shelf fell with many items falling on my mother's head, upper body . . ." (*Id.* at 5.) One of the images also appears to show that the shelving above the picture collapsed downwards. (*Id.* at 7, 8.) Hobby Lobby's Rule 30(b)(6) deponent testified that it is Hobby Lobby's position that the shelf dislodged. (ECF No. 53-7 at 5.) Plaintiff alleges that as a result of the incident, she has sustained injuries to her head and neck. (ECF Nos. 1-2 at 3, 46 at 3-6.)

The displays at Hobby Lobby such as the one Plaintiff attempted to take a picture from are set up using schematics, also referred to as "planograms." (ECF No. 48 at 8-10.) While the planogram for the superhero picture display at issue did not include shelves above them, the manager in training at the time of the incident testified that shelving above such displays was permitted by managers and used at various times when needed based on product volume. (*Id.* 12-13, 17-19.)

Plaintiff's expert, Mr. Rodney Taylor, concluded that the shelf fell because there was insufficient space between it and the pictures displayed below, making it difficult for a customer to retrieve the item without disrupting the shelf above. (ECF No. 48 at 61.) In his supplemental report, Mr. Taylor also noted that in one of the pictures provided by Hobby Lobby, which appears to show the shelves just after the collapse, there is only one peg between the top of the picture Plaintiff had tried to remove and the top of the peg board where the shelf was. (*Id.* at 104.)

However, in another image apparently taken sometime after the incident, approximately four peg holes can be seen between the picture and the top of the display. (*Id.*) A store manger at the time agreed in her testimony that lifting one of the pictures at the top of the display could potentially cause the shelf above to dislodge. (ECF No. 53-5 at 4.)

### B. Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies this burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### C. Analysis

#### 1. Mr. Taylor's Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, an expert must be qualified by "knowledge, skill, experience, training, or education." If qualified, the expert's testimony will be admissible if it will help the trier of fact, is based on sufficient facts or data and reliable principles and methods, and reliably applies those principles to the facts of the case. Fed. R. Evid. 702. Defendant argues that Mr. Taylor is not qualified to offer an opinion on "design standards," rendering his opinions inadmissible under Rule 702. Specifically, Defendant argues that Mr. Taylor lacks the required "knowledge, skill, experience, training, or education" in "designing, constructing, or maintaining shelving" required by Rule 702. (ECF No. 47 at 8.)

#### a. Qualified Expert

Mr. Taylor's experience and testimony persuades the Court that he is qualified. While Defendant's motion focused on specific aspects of Mr. Taylor's experience in which he was not specifically working in shelving design, there are many other aspects of his experience that convince the Court that he is sufficiently qualified to render opinions under Rule 702. Mr. Taylor testified that he has, throughout his 39 years of work experience, set up "hundreds" of retail displays and conducted safety inspections on "thousands" of displays. (ECF No. 53-8 at 18.) Mr. Taylor is a member of the American Society of Safety Professionals, where he holds several Safety Management Certifications. These certifications include topics such as "hazard identification and prevention," and "job safety awareness." (ECF No. 48 at 113-14.) In addition, Mr. Taylor testified that this course addressed "material handling and storage," including "how things are supposed to be stored and how they are supposed to be secured." (ECF No. 53-8 at 6.) It also appears that based on his CV and his testimony that several of his past positions entailed safety management in a retail setting and

1    included conducting safety inspections and audits in retail settings. (ECF No. 48

2    at 113.) The Court therefore finds that Mr. Taylor's experience and certifications

3    qualify him as an expert regarding safety in a retail environment. *See Rees v.*

4    *Target Corp.*, No. 06-10676, 2008 WL 7440009, at *3-4 (E.D. Mich. Mar. 31, 2008)

5    (finding that expert was qualified on safety practices in retail industry where he

6    had been involved in retail safety for 38 years, was a safety consultant, and had

7    several safety certifications).

8                    **b. Reliability and Standard of Care**

9            Defendant also argues that even if Mr. Taylor is qualified, that he "cites no

10    standards that apply to designing, constructing, or maintaining a retail display."

11    (ECF No. 47 at 1.) It is not clear to the Court whether Defendant proffers this

12    assertion as an argument that Mr. Taylor's testimony is not reliable, or simply to

13    argue that Plaintiff has failed to proffer evidence in support of the breach element

14    of her negligence claim. If Defendant is arguing that Mr. Taylor's testimony is

15    unreliable because of this, the Court disagrees. First, as Plaintiff's opposition

16    points out, Mr. Taylor's report did speak to the industry standard: it stated that

17    based on his experience, "it is widely accepted within the industry that customer

18    service standards direct the industry to maintain competent, safe, and secure

19    shelving requirements so that merchandise does not fall." (ECF No. 48.) The

20    report also stated, "as a safety professional, it is expected that proper safety

21    measures would be in place to ensure the stability of the picture frames and

22    shelving units," and that based on the Loss Prevention Foundation's guidance,

23    "the industry anticipates that customers should have the ability to touch, select,

24    remove, and purchase frames, posters, and pictures from gondola displays

25    without encountering any hazards, structural issues, or collapses." (*Id.* at 57,

26    59.) Testimony regarding industry standards is permitted by the Federal Rules of

27    Evidence. *United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 857

28    (W.D. Wash. 2021) (permitting testimony on the applicable industry standards).

1    Turning to the reliability inquiry more broadly, it is undisputed that Mr.

2    Taylor is a non-scientific expert. Where the testimony concerns "non-scientific"

3    issues, the reliability inquiry "'depends heavily on the knowledge and experience

4    of the expert, rather than upon scientific foundations.'" *Ulbricht*, 576 F. Supp. 3d

5    at 856 (W.D. Wash. 2021) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373

6    F.3d 998, 1017 (9th Cir. 2004)). In fulfilling its role as a "gatekeeper" in

7    determining the reliability of non-scientific expert testimony, the Court may look

8    to the expert's knowledge and experience. *Leite v. Crane Co.*, 868 F. Supp. 2d

9    1023, 1036 (D. Haw. 2012), *aff'd*, 749 F.3d 1117 (9th Cir. 2014) (citing *Hangarter*,

10   373 F.3d at 1018 (9th Cir. 2004)).

11   Mr. Taylor's report indicates that he used his many years of experience in

12   the retail safety industry and his Safety Management Certifications, as well as

13   several other resources, in forming his opinions. Mr. Taylor cites to several

14   sources in his report, for example, the Accident Prevention Manual 12th Edition,

15   and OSHA 1910.22 General Requirements – Hazard Identification and Materials

16   Handling. (*See* ECF No. 48 at 58.) Defendants have made no argument as to why

17   Mr. Taylor's experience, certifications, and consultation of these materials fails to

18   make his testimony reliable. The use of his experience, training, and these

19   resources take his opinions outside of the realm of "unsupported speculation."

20   *Leite*, 868 F. Supp. 2d at 1036-37 (D. Haw. 2012) (affidavits setting forth

21   knowledge and experience of experts based on extensive experience in Navy

22   provided basis for opinions and took opinions "outside the realm of unsupported

23   speculation"). For the purposes of this motion, the Court finds that Mr. Taylor's

24   testimony is reliable.

25   Additionally, based on his report and testimony, Mr. Taylor's opinions are

26   based on sufficient facts and data: he reviewed discovery documents in this case,

27   conducted a site inspection, and interviewed Plaintiff. (ECF No. 48 at 39, 44, 77.)

28   Mr. Taylor's experience and certifications are not within the knowledge of an

average juror. Mr. Taylor's report speaks directly to industry standards, the cause of the incident, and the element of breach. The Court accordingly finds that Mr. Taylor's testimony is based on sufficient facts and data, as well as relevant and helpful to the jury. *See* Fed. R. Evid. 702. The Court finds that Mr. Taylor's report and testimony are admissible and will consider them in its analysis of Defendant's summary judgment motion.

### 2. Breach and Causation

To prevail on a negligence theory under Nevada law, "a plaintiff generally must show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 724 (2009) (quoting *Doud v. Las Vegas Hilton Corp.*, 864 P.2d 796, 798 (Nev. 1993), *superseded by statute on other grounds as stated in Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 265 P.3d 688, 691 (Nev. 2011)). Here, Defendant argues that Plaintiff has failed to present admissible evidence in support of the breach element of her claim. The Court disagrees.

Defendant first argues that while Plaintiff relies on her expert in support of her argument for breach, Mr. Taylor's report does not identify (1) what caused the shelf to fall, or (2) any act or omission that caused or contributed to the shelf falling. This contention ignores several aspects of the report. Mr. Taylor's report states in multiple places that the shelf fell because the shelves were positioned too close to the picture frames below them, such that the act of reaching for the pictures could disrupt the shelf above and cause it to fall. (ECF No. 48 at 57, 61.) The expert report and deposition testimony also state that the fact that the shelf was not properly secured contributed to its collapse. (*Id.* at 56-57; ECF No. 53-8 at 13.)

Mr. Taylor's report also identifies several acts or omissions by Hobby Lobby that caused or contributed to the shelf falling, including: Hobby Lobby added a

1   top shelf to the display which was not present on the planogram, Hobby Lobby
2   set up the display such that the picture frames were too close to the top shelf,
3   Hobby Lobby failed to ensure that the display was stable, and Hobby Lobby failed
4   to properly inspect and identify the safety hazard. (ECF No. 48 at 57, 61, 62.)

5          Defendant next argues that Mr. Taylor failed to identify an applicable
6   standard of care. It is undisputed that Hobby Lobby owed a duty of care to
7   Plaintiff as a customer. In Nevada, there is a general duty to use reasonable care
8   in making premises safe for business invitees. *Gresham v. Petro Stopping Centers,*
9   *LP*, No. 3:09-CV-00034-RCJ-VP, 2010 WL 3070436, at *3 (D. Nev. Aug. 3, 2010)
10  (citing *Twardowski v. Westward Ho Motels, Inc.*, 476 P.2d 946, 947 (Nev. 1970));
11  *Fowler v. Wal-Mart Stores, Inc.*, No. 2:16-CV-450-JCM-GWF, 2017 WL 2271571,
12  at *2 (D. Nev. May 24, 2017) (citing *Sprague v. Lucky Stores, Inc.*, 849 P.2d 320,
13  322 (Nev. 1993)). The question, therefore, is whether Hobby Lobby breached its
14  duty of care by setting up a display in an unreasonably dangerous manner. *See*
15  *Elliott v. Target Corp.*, No. 2:11-CV-1215-JCM-RJJ, 2012 WL 3278629, at *5 (D.
16  Nev. Aug. 9, 2012) (issue was whether store breached duty of care by displaying
17  wire shelves in an unreasonably dangerous manner). As discussed above, Mr.
18  Taylor's report opined on industry standards for retail displays and shelving
19  safety, and stated that in his opinion, the display created a dangerous situation.
20  A reasonable juror could credit his testimony and find that the display was set
21  up in an unreasonably dangerous manner, and thus that Hobby Lobby breached
22  its duty of reasonable care to customers.

23         Finally, Defendant argues that not following the planogram is not evidence
24  of a breach because the law, and not internal policies, set the standard of care.
25  The Court agrees that evidence of adherence or nonadherence to internal policies
26  is not dispositive of a breach of the standard of care. *McConnell v. Wal-Mart Stores,*
27  *Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014) ("[W]hether Defendant adhered
28  to its own policies . . . is simply not relevant to whether it was negligent in this

case.") Nonadherence to the planogram alone does not in and of itself show a breach of the standard of care. However, Plaintiff's argument with regards to breach is not simply that Defendant failed to follow the planogram by adding a shelf, but rather that Defendant's addition of the shelf, combined with other acts and omissions described above, breached a general duty of reasonable care because it created an unreasonably dangerous condition.

The Court finds that Plaintiff has presented evidence, in the form of her expert's report and testimony, from which a reasonable juror could find that Hobby Lobby breached its general duty to exercise reasonable care by building and maintaining the display in an unreasonably safe manner. As such, Defendant Hobby Lobby is not entitled to summary judgment.

### III.    Motion for Sanctions

Plaintiff's motion for sanctions asks the Court to impose a sanction on Hobby Lobby for spoliation because Hobby Lobby failed to preserve the items that allegedly fell on Plaintiff during the incident.

It is unclear from the evidence what became of the moose antlers and other merchandise that allegedly fell on Plaintiff in the incident. The store manager in training, Mr. Evans, testified that he did not remember saving the items, but that he most likely would have put them in the office for the store manager, Ms. MacKinnon, to address. (ECF No. 44-14 at 5.) Ms. MacKinnon testified that Mr. Evans informed her that he had put the moose antlers in the office but can't remember them being there. (ECF No. 44-12 at 8-9.) When Plaintiff requested production of the items which fell from the shelves that day, Hobby Lobby responded that it "does not have any items responsive to this request." (ECF No. 44-16 at 2.) Plaintiff subsequently requested the antlers specifically and Hobby Lobby responded that it "does not have the subject antlers." (ECF No. 44-17 at 2.) Hobby Lobby's 30(b)(6) deponent testified that the antlers "are gone" and that "someone at Hobby Lobby must have" disposed of them. (ECF No. 44-11 at 22.)

It is not clear at what point the antlers were disposed of, or what happened to the other items.

### A. Legal Standard

District courts possess inherent power to sanction a party that has despoiled evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). "Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (quoting *Hernandez v. Garcetti*, 80 Cal. Rptr. 2d 443, 446 (Ct. App. 1998)). A party seeking sanctions for spoliation must establish that: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." *Golia-Huffman v. Smith's Food & Drug Centers, Inc.*, No. 2:21-CV-01260-APG-EJY, 2023 WL 6390525, at *2 (D. Nev. Aug. 8, 2023). The threshold question is "whether or not evidence was actually altered or destroyed," which the moving party must prove by a preponderance of the evidence. *Id.* at *5-6; *U.S. E.E.O.C. v. Wedco, Inc.*, No. 3:12-CV-00523-RCJ, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014).

### B. Analysis

#### 1. Timeliness

Defendant first argues that Plaintiff's motion is untimely because it was "delayed." Motions for sanctions are untimely where they are filed with undue delay. *Lopez v. Cardenas Markets, LLC*, No. 2:21-CV-01915-JCM-BNW, 2023 WL 3182658 at *3 (D. Nev. May 1, 2023) (citations omitted). "The outer limit for seeking discovery sanctions that are dispositive in nature is the deadline for filing dispositive motions." *Id.* (citing *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1305 (E.D. Cal. 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021)).

1    Plaintiff's motion was filed on November 15, 2024, a few weeks after

2    discovery had closed and a few days before the dispositive motion deadline of

3    November 20, 2024. Defendant argues that Plaintiff was aware of the grounds for

4    spoliation after it received Hobby Lobby's responses to its requests for production

5    of the items on June 21, 2024, and July 12, 2024, and that the motion filed in

6    November was therefore unduly delayed.

7    Defendant cites to several cases for the proposition that delayed motions

8    for sanctions may be denied as untimely. Many of the cases Defendant cites focus

9    on situations where there was a large gap between when the moving party learned

10    of the grounds for sanctions and when the motion was actually brought. *See, e.g.*

11    *Olson v. Shawnee Cnty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1200 (D. Kan. 2014)

12    (movant moved for sanctions more than a year after learning of grounds and

13    brought argument in response to summary judgment motion); *Cottle-Banks v.*

14    *Cox Commc'ns, Inc.*, No. 10CV2133-GPC WVG, 2013 WL 2244333, at *16 (S.D.

15    Cal. May 21, 2013) (denying as untimely motion for spoliation sanctions filed nine

16    months after movant learned of grounds).

17    Plaintiff's reply explains why the motion was filed after the close of

18    discovery. After the Court denied the parties' stipulation for an extension of the

19    discovery period, the parties agreed—at Hobby Lobby's suggestion—that Plaintiff

20    could depose Hobby Lobby's 30(b)(6) deponent, Mr. James, a few days after the

21    discovery deadline set by the Court.[1] (ECF No. 54-4.) Discovery ended on October

22    23, 2024, and the deposition took place on October 28, 2024. (ECF No. 54-1.)

23    The Court agrees with Plaintiff that Mr. James's deposition was necessary to filing

24    this motion because Mr. James provided key testimony as to spoliation,

25

26    [1]  Judge Baldwin appropriately denied the parties' seventh motion for extension
of time to complete discovery (after informing the parties there would be no
27    further extensions three times). (ECF Nos. 29, 36, 38, 40.) It would be unjust for
Defendant to suggest and participate in discovery after the cutoff deadline, and
28    then attempt to bar Plaintiff's motion as untimely.

discussed below. Plaintiff ultimately filed its motion on November 15, approximately two weeks after it received the transcript of Mr. James's deposition. (*Id.*) The Court finds that this was not an undue delay.

The cases from this District that Defendant cites are also not persuasive. In both, the court denied the motions for sanctions on other grounds, while also noting that discovery would have been the appropriate time to raise the issue. *See Meza-Perez v. Sbarro LLC*, No. 2:19-CV-00373-APG-EJY, 2023 WL 2842747, at *10 (D. Nev. Apr. 6, 2023), *aff'd*, No. 23-15702, 2024 WL 4532903 (9th Cir. Oct. 21, 2024) (denying motion where there was no evidence to support allegations that photos were deleted, and noting that the plaintiff "does not explain why, if she knew about this during discovery, she raises it now for the first time"); *Badger v. Wal-Mart Stores, Inc.*, No. 2:11-CV-1609-KJD-CWH, 2013 WL 3297084, at *8 (D. Nev. June 28, 2013) (denying motion where it was unclear whether evidence ever existed, and noting that "it is also unclear why this matter was not resolved during discovery"). Neither of those cases supports a conclusion that the fact that a motion for sanctions for spoliation was filed after discovery closed alone warrants a finding that it is untimely. *See also Larios*, 442 F. Supp. 3d at 1305 (noting that federal courts have allowed parties to raise spoliation claims after the close of discovery).

The Court finds that Plaintiff did not unreasonably delay in bringing her motion, which was filed before the dispositive motion deadline. Plaintiff's motion is therefore timely. *See Lopez*, No. 2023 WL 3182658, at *3 (motion for sanctions brought after discovery closed but before dispositive motion deadline was timely because movant received responses regarding lost evidence only a few weeks before discovery closed).

## 2. Threshold Inquiry: Altered or Destroyed

Plaintiff has shown by a preponderance of the evidence that the items at issue were destroyed. Hobby Lobby's 30(b)(6) expert has admitted that the antlers

"are gone" and that "someone at Hobby Lobby must have" disposed of them. (ECF No. 44-11 at 22.) Hobby Lobby's response to requests by Plaintiff for the items that fell on her was that they do not have them in their possession, and Hobby Lobby's briefing does not contend otherwise.

### 3. Control

Defendant first argues that Plaintiff has failed to show that it was in possession of the items when its duty to preserve began. Hobby Lobby's 30(b)(6) deponent admitted that the antlers were in Hobby Lobby's control.[2] (ECF No. 44-11 at 22.) The other items were in Hobby Lobby's control at the time of the incident as merchandise. As discussed below, the Court finds that Hobby Lobby had a duty to preserve the items that fell beginning on the date of the incident—a time at which Hobby Lobby undisputedly had control over the items. Hobby Lobby therefore had possession of the items for the purposes of the duty to preserve.

### 4. Duty to Preserve

Plaintiff argues that Hobby Lobby had a duty to preserve evidence as soon as her daughter completed an incident report form at the store after the incident on June 5, 2021, as well as when Plaintiff contacted Hobby Lobby in August 2021 about dental surgery she alleges was required because of the accident. Hobby Lobby argues that the duty to preserve did not start until it received a Notice of Representation and Request to Preserve from Plaintiff in November 2021.

Whether an incident report triggers a duty to preserve evidence must be assessed in light of the factual circumstances. Several courts in this District have found that completion of an incident report, combined with other factual circumstances, is sufficient to trigger a duty to preserve. *See Alvarez v. Walmart, Inc.*, No. 2:19-CV-02189-GMN-DJA, 2021 WL 7758614, at *2-3 (D. Nev. June 11,

---

[2] While both parties' briefing did focus on the antlers, Plaintiff's motion is as to all the items that fell during the incident.

2021) (Defendant was on notice when Plaintiff returned to store two days later to speak with a manager and complete and incident report); *Roberts v. Smith's Food & Drug Centers, Inc.*, No. 2:11-CV-01917-JCM, 2014 WL 2123213, at *4-5 (D. Nev. May 21, 2014) (completion of accident report, combined with visible injury, triggered duty to preserve); *Aiello v. Kroger Co.*, No. 2:08-CV-01729-HDM, 2010 WL 3522259, at *3 (D. Nev. Sept. 1, 2010) (completion of incident report and sending video footage to Risk Management department triggered duty to preserve); *Demena v. Smith's Food & Drug Centers, Inc.*, No. 2:12-CV-00626-MMD, 2012 WL 3962381, at *2 (D. Nev. Sept. 10, 2012) (incident report form and fact that plaintiff was carried out of store on gurney triggered duty to preserve).

Here, it is undisputed that Plaintiff's daughter filled out an incident report form the day the incident occurred. (ECF No. 53-3.) Her daughter wrote on the form "upper body cut and bleeding and caused swelling to her head and a headache." (*Id.* at 5.) What appears to be the manager's description states that there was "bleeding on right arm and customer said she had a headache." (*Id.* at 4.) Plaintiff's daughter also took several photos of the scene in front of employees, asked them for a copy of the incident report, and when the employee declined, took a picture of the report. (ECF Nos. 44-9 at 23; 44-18.) The store manager, Ms. MacKinnon, testified that she sent to Risk Management the incident report form and photos of the shelves, display, and merchandise which had fallen off the shelf. (ECF No. 44-12 at 5-6.)

The circumstances here are similar to those in *Roberts*, *Demena*, and *Aeillo*. Like in *Roberts* and *Demena*, Plaintiff both completed an accident form and was visibly injured. *See* 2014 WL 2123213, at *4-5; 2012 WL 3962381, at *2. Like in *Aeillo*, the store manager also sent the incident report as well as images—including images taken of the items at issue—to Risk Management. *See* 2010 WL 3522259, at *3. While Plaintiff was not carried out of the store by medical personnel, as in *Demena*, the Court agrees with the decision in *Roberts*, which

stated that visible injury and complaints of pain after an incident were sufficient to put the defendant on notice of potential litigation, and that the more extreme circumstances in *Demena*—being transported out of the premises into an ambulance—are not required. *Roberts*, 2014 WL 2123213, at *4-5. Here the Court finds that here the facts show that Defendant was on notice of potential litigation on the date of the incident. Plaintiff's daughter completed an incident report form; Plaintiff was visibly injured and bleeding and complained of head pain; Plaintiff's daughter took several steps to document the incident in front of employees; and the store manager sent a report as well as images of the items at issue to Risk Management. Defendant had a duty to preserve evidence beginning on the date of the incident.

The Court rejects Defendant's argument that it somehow did not have notice of the need to preserve the antlers specifically. In the case Defendant cites in support of its argument, the court denied a motion for spoliation for failure to preserve video evidence. *Shakespear v. Wal-Mart Stores, Inc.*, No. 2:12-CV-01064-MMD, 2013 WL 3270545, at *2-3 (D. Nev. June 26, 2013). The plaintiff demanded that Wal–Mart ensure that the "surveillance video in question remains completely undisturbed," however, the court found that Wal-Mart did not spoliate when it failed to preserve video of the *entire store* for the entire date of the incident, as there was no evidence that any cameras captured anything related to the incident. *Id.* Here, in contrast, the Court has found that Defendant spoliated the items at issue. The items at issue were also obviously related to the incident. Nor is Defendant's citation to *Morford v. Wal-Mart Stores, Inc.*, No. 2:09-CV-02251-RLH, 2011 WL 635220 (D. Nev. Feb. 11, 2011) convincing. There, the evidence in question, a floor mat, was removed from the store by a contractor before the defendant was on notice of potential litigation regarding the actual floor mat, and therefore before it had a duty to preserve. *Id.* at *4. Here, the incident report form states that "the above shelf fell with many items falling on my mothers head,

18

upper body . . ." (ECF No. 53-3 at 5.) Photos of those items were sent to Risk Management. (ECF No. 44-12 at 5-6.) Hobby Lobby was unquestionably on notice that the items were potential evidence related to the incident. *See Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 58 (Nev. 2004) (hospital had duty to preserve equipment involved in incident).

### 5. Culpable State of Mind

"A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions. District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (cleaned up). The degree of fault in destruction of evidence is relevant to the consideration of what sanction to impose. *Id.* Here, the Court has found that Defendant destroyed the items that fell from the shelf after having notice that they were potentially relevant to litigation. This is sufficient to satisfy this element of spoliation.

### 6. Prejudice

"The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Leon*, 464 F.3d at 959 (internal citation omitted). "To satisfy this burden, the party asserting prejudice must only come forward with plausible, concrete suggestions" about what the spoliated evidence "might have been." *Brown v. Albertsons, LLC*, No. 2:16-CV-01991-JAD-PAL, 2017 WL 1957571, at *9 (D. Nev. May 11, 2017) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011)); *see also Mizzoni v. Allison*, No. 3:15-CV-00313-MMD-VPC, 2018 WL 3203623 (D. Nev. Apr. 4, 2018), *report and recommendation adopted*, 2018 WL 2197957, at *6 (D. Nev. May 14, 2018).

Plaintiff argues that she is prejudiced by the destruction of the items that allegedly fell on her because the crucial issue at trial in this case will be

causation. Because it is disputed whether the items that fell on Plaintiff's head caused her medical issues, the inability to "determine definitely the composition and precise weight and measurements off all the items that struck her" has prejudiced her ability to put forth her case. (ECF No. 44 at 12.)

Defendant argues that Plaintiff has not demonstrated prejudice because Defendant's 30(b)(6) witness offered the weight and measurement of the antlers in his deposition, and because Defendant offered Plaintiff the opportunity to inspect the same antler product, but she declined. Plaintiff counters this by noting that Defendant did not offer the exemplar antlers until October 23, 2024, the date discovery closed. (ECF No. 51-2 at 6.) It appears that the 30(b)(6) deponent offered the dimensions and weight of the exemplar at his deposition on October 28, 2024. (ECF No. 51-3 at 3-4). All of this, Plaintiff points out, occurred after expert disclosures were due. Additionally, Plaintiff notes that Defendant has not provided information or exemplars for the remaining items that fell during the incident.

The Court finds that Plaintiff has met her burden to bring forth "plausible, concrete suggestions about what the spoliated evidence might have been*." See Brown*, 2017 WL 1957571, at *9. Plaintiff suggests that with the opportunity to examine the items, she could have determined the composition, weight, and measurements of the items that allegedly hit her during the incident, which are critical to her argument that the items hitting her caused her head and neck injuries. While Defendant appears to have offered Plaintiff the ability to examine an exemplar of the antlers, doing so the day discovery closed and after expert disclosures were due did not provide time for Plaintiff's expert to examine them. Thus, the prejudice was not cured. Additionally, Defendant offered no information or exemplars as to the other items.

**C. Appropriate Sanction**

Once it has been determined that spoliation has occurred, the district court

may sanction in various ways. Courts have broad discretion in selecting the appropriate sanction but should "should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the other party." *Alvarez*, 2021 WL 7758614, at *4 (D. Nev. June 11, 2021) (citing *In re Napster*, 462 F. Supp. 2d at 1066). Here, Plaintiff seeks sanctions in the form of (1) an order striking Hobby Lobby's answer and (2) an adverse inference jury instruction.

Courts apply three tiers of sanctions for spoliation with corresponding levels of culpability. In severe cases of bad faith spoliation, a court may strike a spoliating defendant's answer or enter default judgment on specific issues. *See In re Napster*, 462 F. Supp. 2d at 1060; *see also Peschel v. City Of Missoula*, 664 F. Supp. 2d 1137, 1146 (D. Mont. 2009). In the middle tier of culpability, a court may impose a mandatory, rebuttable presumption "when a spoliating party has acted willfully or recklessly." *Apple*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012). Spoliation is willful when "the party has 'some notice that [evidence was] potentially relevant to the litigation before [it was] destroyed.'" *Scalia v. Cnty. of Kern*, 658 F. Supp. 3d 809, 815 (E.D. Cal. 2023) (citing *Leon*, 464 F.3d at 959). When the spoliating party has acted only negligently, the least harsh instruction permits, but does not require, the jury to believe "that the lost evidence is both relevant and favorable to the innocent party." *Id.* (quoting *Apple*, 881 F. Supp. 2d at 1150); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 628 (C.D. Cal. 2013) (noting that courts in this circuit have found adverse instructions warranted where destruction was grossly negligent).

Striking Defendant's answer is not an appropriate sanction in this case. Dispositive sanctions such as this are appropriate only in "extreme circumstances" and require a finding of "willfulness, fault, or bad faith." *Mizzoni*, 2018 WL 3203623, at *7 (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985)); *Leon*, 464 F.3d at 958. "The most severe sanction is to

strike a defendant's answer and enter a default. Such a dispositive sanction 'should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party.'" *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-CV-02239-GMN-EJY, 2020 WL 959245, at \*4 (D. Nev. Feb. 26, 2020) (quoting *Micron Tech.,* 645 F.3d at 1328-29).

Plaintiff has not put forth clear and convincing evidence that Hobby Lobby acted intentionally or in bad faith when it failed to preserve the items involved in the incident. The Court therefore declines to issue a sanction striking Defendant's answer. *See id.* (declining to strike answer and issuing jury instruction sanction where conduct was grossly negligent); *White v. TK Elevator Corp.*, No. 2:21-CV-01696-ART-MDC, 2024 WL 4487188, at \*4 (D. Nev. June 18, 2024), *report and recommendation adopted,* No. 2:21-CV-01696-ART-MDC, 2024 WL 4346348 (D. Nev. Sept. 28, 2024) (sanction striking answer not appropriate where conduct was reckless but there was no evidence that actions were intentional or in bad faith); *Anderson v. Wal-Mart Stores, Inc.*, No. 2:10-CV-02235-GMN, 2011 WL 4621286, at \*6 (D. Nev. Oct. 3, 2011) (sanction of striking answer not justified where evidence did not support finding of intentional or reckless conduct).

The Court finds that Plaintiff's other requested sanction, an adverse inference instruction, is appropriate. While Defendant argues that even this sanction is not warranted because its conduct was merely negligent, Defendant relies primarily on out-of-circuit case law for this argument, ignoring the fact that courts in the Ninth Circuit issue spoliation sanctions based on negligence. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013) (collecting cases). The Court finds that Defendant's conduct in failing to preserve the items when it had a duty to do so was at the very least negligent. *In re Napster*, 462 F. Supp. 2d at 1070 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.")). The Court will accordingly grant

22

1 | Plaintiff's motion for sanctions, in the form of an adverse inference jury
2 | instruction.

3 | **IV.    Conclusion**

4 |     It is therefore ordered that Plaintiff's motion to strike (ECF No. 46) is
5 | GRANTED.

6 |     It is further ordered that Defendant's motion for summary judgment (ECF
7 | No. 47) is DENIED.

8 |     It is further ordered that Plaintiff's motion for sanctions (ECF No. 44) is
9 | GRANTED IN PART. Sanctions will issue in the form of an adverse inference jury
10 | instruction.

11 |     Dated this 15th day of July 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE